OPINION OF THE COURT
Herman Cahn, J.
Plaintiff Licensing Corporation of America (LCA) seeks the production in discovery of legal bills rendered by the law firms of Grippo & Elden, Esqs. and Goodman & Goodman, Esqs. to their client defendant National Hockey League Players Association (NHLPA).
LCA represented NHLPA from 1968 through September *127 1991 as its exclusive agent in connection with the marketing of the NHLPA name, logo, and insignia as well as photographs and signatures of NHLPA players. LCA and NHLPA were operating pursuant to an exclusive representation agreement dated November 22, 1982, which was renewed on June 1, 1987, and which by its terms was to terminate May 31, 1992. The agreement provides, among other things, that LCA would receive a stated percentage of the revenue generated by licensing agreements negotiated by it.
In and around January 1991, NHLPA informed LCA that it desired to terminate their agreement. In March 1991, LCA commenced this action seeking a declaratory judgment that the agreement between LCA and NHLPA is in full force. On September 17, 1991, NHLPA notified LCA that it had terminated the agreement for cause. NHLPA claims that LCA’s simultaneous representation of the National Hockey League created a conflict of interest and caused NHLPA to lose revenue. LCA maintains that it has committed no wrong and has always used its best business judgment in its representation of NHLPA. In a decision dated October 2, 1991, this court denied a motion for a preliminary injunction seeking to enjoin NHLPA from terminating its agreement with LCA.
The parties are now engaged in discovery proceedings.
LCA seeks the legal bills of the firms representing NHLPA in order to demonstrate that NHLPA had considered terminating the agreement with LCA, prior to LCA’s commencement of this action. LCA also seeks to determine the precise time NHLPA first decided to terminate the agreement as well as proof that LCA was, in some way, "set up” by NHLPA, i.e., that NHLPA in some way manufactured a self-serving correspondence record while contemplating a lawsuit against LCA to terminate the agreement. LCA also argues that the bills will show specific NHLPA testimony to be false. At a conference before the court on January 2, 1992, NHLPA was directed to submit the bills for an in camera inspection. The bills were submitted to the court along with a 12-page explanatory letter.
After reviewing in detail the submitted bills, this court finds that they are not subject to discovery pursuant to CPLR 3101 (b), (c) and, because of the attorney and client privilege. (CPLR 4503.)
While a retainer and fee arrangement agreement may be subject to discovery (see, Oppenheimer v Oscar Shoes, 111 *128 AD2d 28; Matter of Priest v Hennessy, 51 NY2d 62), the actual bills detailing the work done by the attorneys are clearly privileged material. The bills which were rendered are detailed in showing services, conversations, and conferences between counsel and others.
In addition to the above reasons for declining to direct disclosure of the bills, the court notes that if they were disclosed, the attorneys rendering them might well become witnesses herein. This would make it impossible for them to continue to represent defendant herein, by reason of the "advocate-witness” rule. (Code of Professional Responsibility DR 5-102.) To allow access to such material would disclose discovery and trial strategy, and reveal the factual investigation and legal work that has been done by NHLPA’s attorneys. Particularly here, where the bills submitted are so detailed containing attorney diary entries and other matters so that disclosure would reveal more than LCA has even requested (see, Rossi v Blue Cross & Blue Shield, 140 AD2d 198, affd 73 NY2d 588; Jarai-Scheer Corp. v St. Paul Fire & Mar. Ins. Co., 52 AD2d 555; Gallo v Mayer, 20 AD2d 542; Hoffert Diamond Co. v Valentine, 29 AD2d 517).
There is no doubt that the bills submitted to the court which include attorney’s time sheets and descriptions of the work performed were prepared by attorneys and were not meant for any party other than NHLPA. Although these documents themselves do not provide legal advice to NHLPA, disclosure would reveal certain privileged communications made between NHLPA and its attorneys and therefore they must be considered privileged. The purpose of the attorney-client privilege is to protect communication by a client to an attorney which is made with the expectation that this information will be kept confidential and not be made public (see, Matter of Jacqueline F., 47 NY2d 215). "An attorney may not be compelled * * * to disclose his retainer or the nature of the transactions to which it related when such information could be made the basis of a suit against his client.” (Miller v Stern, 262 App Div 5, 7 [1st Dept 1941] [emphasis added]; see also, Matter of Shawmut Min. Co., 94 App Div 156 [4th Dept 1904].) Disclosure would have a chilling effect on a client’s revealing confidences to the attorney and the attorney’s ability to meet and confer with the client or with potential witnesses, employees of the client, etc. In this regard, the subpoena also seeks material which is protected by CPLR 3103 (c).
*129 The court will not allow disclosure of the 12-page explanatory letter which accompanied the bills submitted to the court. The court declines to revoke NHLPA’s attorney’s admission pro hac vice as requested by LCA.