Jeness CORTEZ;  Fred Stone;  Perlmutter Publishing Company, Inc.;  Peter Canzone, Plaintiffs,

v.

CMG WORLDWIDE INC., Defendant.

No. 96–CV–1406 (LEK/RWS).

United States District Court, N.D. New York.

March 27, 1997.

Office of David M. Lenney, Albany, NY (David M. Lenney, of counsel), for Plaintiffs.

Duker, Barret Law Firm, Albany, NY (George F. Carpinello, Scott W. Dales, of counsel), Bell, Seltzer Law Firm, Charlotte, NC (John J. Barnhardt, III, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is defendant CMG Worldwide Inc.'s ("CMG") motion to stay. Oral arguments on this matter were heard on December 6, 1996 in Albany, New York and the Court reserved decision.

## I. FACTS

Defendant CMG is an Indiana corporation that acts as an agent on behalf of corporations, organizations, and celebrities for the purpose of licensing to third parties the right to commercially use the trademarks and trade dress of its clients' properties. CMG also has the responsibility of protecting its clients against unauthorized use of the trademarks and trade dress of the properties. One of CMG's clients is Paulson Enterprises, the partial owner of the famous race horse "Cigar" and the racing stable "Brookside Farms." [1] CMG also represents the owners of the deceased race horses "Secretariat" and "Ruffian."

Plaintiffs Jenness Cortez ("Cortez") and Fred Stone ("Stone") are artists who specialize in creating images of famous racing horses including Cigar, Secretariat, and Ruffian in racing scenes. In addition to depicting the horses, the artists also depict the famous jockeys who rode the race horses as well as the distinctively colored clothing worn by the jockeys and horses known as "silks" which are unique to specific horse stables. Perlmutter Publishing Company, Inc. ("Perlmutter") is a New York Corporation formed by Cortez and her husband Leonard Perlmutter to market the work of Cortez. Plaintiff Pe-

ter Canzone ("Canzone") is one of Stone's agents involved in distributing Stone's work.

On May 15, 1996, CMG informed Stone that he must "cease and desist" from creating and selling images of the race horse Secretariat claiming that use of the name and likeness of the image violated the Lanham Act, 15 U.S.C. § 1125(a) and the Federal Dilution Act of 1995. On July 24, 1996, CMG threatened legal action against Cortez and Perlmutter on similar grounds. On August 9, 1996, CMG filed an action in Indiana State Court against Perlmutter and Cortez on three counts: (i) unfair competition and unjust enrichment, (ii) conversion, and (iii) violations of the Lanham Act, Trademark Dilution Act, and infringement of Trade Dress each with regard to Cigar and Brookside Farms.[2]

The present action was filed by plaintiffs on August 28, 1996. Plaintiffs seek a declaratory judgment by this Court holding that there is no legal right to control the depiction or dissemination of the images of Cigar, Secretariat, or Ruffian, or the silks worn by the jockeys and horses. Plaintiffs further seek punitive damages and attorney's fees. Defendants have moved to stay this action pending the outcome of the Indiana State Court suit.

## II. DISCUSSION

### A. Abstention Under the Declaratory Judgment Act

The Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

---

**1.** While Cigar was owned solely by Paulson at the time this action was commenced, he was sold in part in October or November of 1996. Paulson still owns a 25% interest in the horse and purports to hold all publicity rights.

**2.** It should be noted that in the Indiana action, there are no claims asserted regarding Secretariat or Ruffian.

28 U.S.C. 2201(a). The Supreme Court has stated that "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial" during the pendency of a parallel state court proceeding. *Wilton v. Seven Falls*, 515 U.S. 277, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). Furthermore, the Court held that such decisions will be reviewed by appellate courts by applying the "abuse of discretion" standard. *Id.* at ——, 115 S.Ct. at 2144.

■ In exercising its discretion, a district court is bound to apply the factors set forth in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). *Id.*, 515 U.S. at ——, 115 S.Ct. at 2140. In *Brillhart*, the Court stated that a district court must "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in state court." [3] 316 U.S. at 495, 62 S.Ct. at 1176. The factors a district court should consider are 1) "the scope of the pending state court action and the nature of the defenses open there," 2) "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state] proceeding," 3) "whether necessary parties have been joined," and 4) "whether such parties are amenable to process in that proceeding...." [4] *Id.* *See also Youell v. Exxon*

*Corp., (Youell II)*, 74 F.3d 373, 375–76 (2d Cir.1996).

The Second Circuit has stated that although

> "*Brillhart* left the exact contours of a district's discretion to be molded by future cases, it 'indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of *the same state law issues* is pending in the state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed.'"

*Id.* citing *Wilton*, 515 U.S. at ——, 115 S.Ct. at 2141 (quoting *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176 (emphasis added)). "Underlying the *Brillhart* decision was the Court's concern that it was being called upon to pronounce independently upon *state* law.... 'It is not our function to find our way through a maze of [state] statutes and decisions....'" *Id.* (quoting *Brillhart*, 316 U.S. at 497, 62 S.Ct. at 1177 (emphasis in original)).

The Second Circuit was careful to note that "[t]o resolve novel questions of federal law, however, is quintessentially our obligation." *Id.* "[A] federal question of first impression must all but demand that the federal court hear the case ...'" *Id.* (quoting *Youell v. Exxon Corp. (Youell I)*, 48 F.3d 105, 114 (2d Cir.1995)). As is relevant to the case at bar, the Second Circuit commented: "While we loath wasting judicial resources, it would be worse to cede federal review of an issue of federal law merely because [the par-

---

**3.** The *Brillhart* action involved interpretation of Missouri state law. District courts within the Second Circuit have had several opportunities to address the question of abstention in federal cases which involved purely state law and have chosen to abstain. *See Fireman's Fund Ins. Co. v. Chris–Craft Indus., Inc.*, 932 F.Supp. 618 (S.D.N.Y.1996); *Cadle Co. v. Bankers Federal Sav. Bank*, 929 F.Supp. 636 (E.D.N.Y.1996); *National Union Fire Ins. Co. v. Coric*, 924 F.Supp. 373 (N.D.N.Y.1996); *McDonald's Corp. v. 2502 8th Ave. Corp.*, 920 F.Supp. 67 (S.D.N.Y.1996). However, certain actions involving state law have been allowed to continue, such as when the parties to the federal action are different than the parties in the state action. *See Woodstock Resort Corp., v. Scottsdale Ins. Co.*, 921 F.Supp. 1202 (D.Vt.1995).

**4.** Both the plaintiffs' and defendant's briefs refer to two additional factors, avoiding duplicative

proceedings and forum shopping, articulated in *Fireman's Fund Ins. Co. v. Chris–Craft Indus., Inc.*, 932 F.Supp. 618, 620 (S.D.N.Y.1996) (citing *Wilton*, 515 U.S. at ——, 115 S.Ct. at 2140). After closely examining the *Wilton* decision, the Court finds that the Supreme court did not intend to add these two additional factors. Rather, this Court sees these additional factors as belonging to the "exceptional circumstances" test which was specifically distinguished from the *Brillhart* decision. *Wilton*, 515 U.S. at ——, 115 S.Ct. at 2142. The "exceptional circumstances" test was applied in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) in the context of a court's decision to stay a suit to compel arbitration in favor of a pending state action. *See Wilton*, 515 U.S. at ——, 115 S.Ct. at 2142. Therefore, the Court declines to include these factors in its analysis.

ty in favor of the stay] won the race to judgment in state court." *Id.* (quoting *Youell I*, 48 F.3d at 114).

Plaintiffs contend that there is a novel issue of federal law in this case, specifically whether the image of a race horse can be considered a property right under federal law. Defendant asserts there is no novel federal issue and that the Court should abstain pursuant to *Brillhart.* For the reasons set forth below, the Court finds that there is a novel issue of federal law presented in this case. Furthermore, the Court finds that applying the *Brillhart* factors also leads to the conclusion that the motion should be denied.

### 1. *Novel Federal Question*

Section 43(a) (1) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of a fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities, by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The Lanham Act serves to protect a variety of names and likenesses. For example, courts have held that the image and name of an individual is protected under the Act. In *Allen v. National Video, Inc.,* 610 F.Supp. 612 (S.D.N.Y. 1985) and *Allen v. Men's World Outlet, Inc.,* 679 F.Supp. 360 (S.D.N.Y.1988), Woody Allen successfully prevented the defendants from using his likeness in their advertisements. *See also Vanderbilt v. Rolls–Royce Motor Cars, Inc.,* No. 88 CIV. 8263, 1990 WL 37825 (S.D.N.Y. March 28, 1990). The Act has also protected the names and likenesses of popu-

lar musicians and musical groups. *See Winterland Concessions Co. v. Fenton,* 835 F.Supp. 529 (N.D.Cal.1993) (Madonna, George Michael, New Kids on the Block among others); *Joel v. Various John Does,* 499 F.Supp. 791 (E.D.Wis.1980) (Billy Joel). In addition, cartoon character images are also protected under the Lanham Act. *See Warner Bros. Inc. v. American Broadcasting Cos.,* 720 F.2d 231, 240 (2d Cir.1983) (Superman); *Walt Disney Prods. v. Air Pirates,* 581 F.2d 751, 754–55 (9th Cir.1978) *cert denied* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979) (Mickey Mouse and other Disney characters) *United Feature Syndicate, Inc. v. Koons,* 817 F.Supp. 370 (S.D.N.Y.1993) (Garfield's Odie).

█ However, the Lanham Act has never been invoked to protect the name or likeness of any animal, including famous dogs, cats, or race horses. Nor has any court in any jurisdiction recognized unregistered trademarks or trade dresses in the form of race horse names, images, or racing silks. In a recent related case decided in the Northern District of New York, the Honorable Frederick J. Scullin, Jr. refused to attach a property right to a racing scene which included an accurate image of the Saratoga Raceway. *New York Racing Ass'n v. Perlmutter Publishing, Inc.,* No. 95–CV–994, 1996 WL 465298 (N.D.N.Y. July 19, 1996).

Defendant asserts that the plaintiff's actions in making and selling images of Secretariat, Ruffian, and Cigar and their accompanying silks violates that Lanham Act. Defendant further asserts that this infringement is not a novel issue of federal law because CMG is not attempting to establish a publicity right. Rather, defendant argues that familiar Lanham Act principles are being applied to "prevent confusion in the marketplace as to the origin, sponsorship or approval of the lithographs and other merchandise sold by Plaintiffs." Def.'s Reply Mem. at 3. The Court finds this assertion to be without merit. Inherent in an action to prevent confusion in the marketplace is the assumption that there is an actual holder of a right in the entity which is to be

protected.[5] For these reasons, the Court finds that there is a novel question of federal law in this case and that abstention is therefore inappropriate under *Youell.*

### 2. Abstention Factors

Even if there was no novel federal question in this action, the application of the *Brillhart* factors compels the Court to deny a stay. As discussed earlier, the Supreme Court set forth four factors that a district court should consider in determining whether to stay a declaratory judgment action. *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176.

■ The first factor to consider is "the scope of the pending state court action and the nature of the defenses open there. . . ." *Id.* The action initiated by CMG in Indiana is based on violations of Indiana common law prohibiting unfair competition and unjust enrichment, the Indiana Offenses Against Property Act, and the Lanham Act. The complaint specifies that the action involves the race horse Cigar and the racing silks associated with Brookside Farms. There is no mention of the horses Secretariat or Ruffian, both of which are included in the action before this Court. Therefore, if this Court were to abstain from hearing this action, the Indiana action would not resolve the rights, if any, which attach to those horses. Therefore, the first *Brillhart* factor weighs in favor of denying a stay.

Second, the Court must consider "whether the claims of all parties in interest can satisfactorily be adjudicated in [the state] proceeding . . ." *Id.* The case before this Court includes one plaintiff, Peter Canzone, who is not listed as a defendant in the Indiana action. Thus, Canzone's interests will not be satisfactorily adjudicated in Indiana. Furthermore, as discussed earlier, the rights which may attach to Secretariat and Ruffian will also not be addressed in Indiana and therefore, the claims of all parties in interest will not be satisfactorily adjudicated.

Third, the Court must decide "whether necessary parties have been joined" in the state proceeding. *Id.* Because one of the plaintiffs in the federal action, specifically Canzone, is not a party to the Indiana action, his interests will not be represented if this action were stayed. Thus, this factor weighs toward denying a stay as well.

The fourth factor is to determine "whether [all] parties are amenable to process in [the state] proceeding. . . . " *Id.* In order to ascertain whether CMG can utilize the Indiana long-arm statute, it must be determined whether CMG does in fact have a property right in the image of Cigar and Brookside Farms racing silks. Without a finding that CMG does in fact have this right, Indiana would be unable to exercise its long-arm jurisdiction because no "minimum contacts" would exist. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Without the needed contact to the state of Indiana, personal jurisdiction over the defendants in the state action would not exist. Once again, this determination is closely linked to a novel question of federal law, specifically, whether CMG has a property right in the image of a race horse and the racing silks in question. Thus, the fourth *Brillhart* factor also weighs in favor of denying the stay. For these reasons, a stay in this case would be improper.

### B. Rule 11 Sanctions and Attorney's Fees

■ In their response to the defendant's motion for a stay, the plaintiffs have moved for Rule 11 sanctions and attorney's fees against the defendant for making what they describe as a misleading motion for a stay. First, Rule 11 provides:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided by Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, . . . the challenged paper, claim, defense, conten-

---

5. The Court finds it worth mentioning that the Indiana action filed by CMG includes a claim for conversion in violation of the Indiana Offenses Against Property Act. Ind.Code Ann. § 35, Art. 17, Ch. 5 (West 1996) (repealed 1976).

tion, allegation, or denial is not withdrawn or appropriately corrected.

Fed.R.Civ.P. 9(c)(1). In requesting Rule 11 sanctions in their response papers, the plaintiffs have failed to follow the proper procedures under the Rule. Furthermore, the Second Circuit has stated that "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir.1996). The plaintiffs have failed to establish that the defendant's allegations are utterly lacking support. Therefore, the request for sanctions and attorney's fees is denied.

Accordingly, it is

ORDERED that the defendant's motion to stay is DENIED; and it is further

ORDERED that the plaintiffs' motion for Rule 11 sanctions and attorney's fees is DENIED; and it is further

ORDERED that the Clerk of the court shall serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.