THE DIVERSIFIED GROUP,
INC., Plaintiff,

v.

Paul DAUGERDAS, Defendant.

Jenkens & Gilchrist, Plaintiff,

v.

The Diversified Group, Inc., Defendant.

American Lawyer Media, Inc.
Movant–Intervenor.

Nos. 00 Civ. 0771(SAS),
00 Civ. 6484(SAS).

United States District Court,
S.D. New York.

Sept. 5, 2003.

Robert A. Feinberg, Deputy General Counsel, American Lawyer Media, Inc., New York, NY, for Movant American Lawyer Media.

William B. Wachtel, John W. McConnell, Wachtel & Masyr LLP, New York, New York, for Respondent DGI.

Ann E. Schofield, McDermott, Will & Emery, New York, New York, Michael A. Pope, Douglas E. Whitney, McDermott, Will & Emery, Chicago, Illinois, Joseph A. Ginsburg, Levin & Ginsburg, Ltd., Chicago, Illinois, for Respondents Jenkens & Gilchrist and Paul M. Daugerdas.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Diversified Group, Inc. ("DGI"), Paul Daugerdas, and Jenkens & Gilchrist ("J & G") (collectively, "respondents") have filed objections to the Report of the Special Master Relating to Motion of American Lawyer Media, Inc. For Leave to Intervene and For Unsealing ("Report"). I have duly considered respondents' objections. For the reasons set forth below, the Report is accepted and adopted with two additions.

## I. PROCEDURAL HISTORY

On April 9, 2003, American Lawyer Media, Inc. ("ALM") moved for an order unsealing documents submitted by the parties in support of and in opposition to a motion for summary judgment ("Summary Judgment Documents") in this now settled action.[1] On July 30, 2003, this Court issued an Opinion and Order unsealing the Summary Judgment Documents so that a Special Master could "quickly but carefully" review the documents, determine which documents, if any, contain privileged attorney-client communications, and redact the privileged sections. *Diversified II*, 2003 WL 21767774 at *8.[2] On August 2, 2003, the Special Master submitted a Report, recommending that some of the documents be redacted in full or in part, but concluding that the "vast majority" need not be redacted at all. Report at 13.

On August 15, 2003, respondents filed objections to several of the recommendations contained in the Report. *See* Joint Memorandum in Support of Objections to Report of the Special Master Relating to Motion of American Lawyer Media, Inc. For Leave to Intervene and For Unsealing

---

1. The underlying action arose out of a dispute between DGI and Paul Daugerdas in connection with a particular tax strategy. For a discussion of the facts of that case, see *Diversified Group, Inc. v. Daugerdas*, 139 F.Supp.2d 445, 448–51 (S.D.N.Y.2001) (*"Diversified I"*). *See also Diversified Group, Inc. v. Daugerdas*, 2003 WL 21767774, at *1–*2 (S.D.N.Y. July 30, 2003) (*"Diversified II"*).

2. With the parties' consent, the Court appointed Stephen A. Saltzburg, Howrey Professor of Trial Advocacy, Litigation, and Professional Responsibility at The George Washington School of Law, as the Special Master. *See id.* at *8 n. 14.

("Obj."). ALM replied on August 21, 2003, requesting that the Court deny the objections and adopt the Report in full. *See* 8/21/03 Letter to the Court from Robert A. Feinberg, Deputy General Counsel for ALM. The following day, the Special Master submitted, on his own accord, a supplemental report elaborating on some of the reasoning employed in his August 2, 2003 Report. *See* Supplemental Report of the Special Master Relating to Motion of American Lawyer Media, Inc. For Leave to Intervene and For Unsealing ("Supp.Report"). Respondents filed additional objections to the Supplemental Report on August 25, 2003. *See* Respondents' Objections to Supplemental Report of the Special Master Relating to Motion of American Lawyer Media, Inc. For Leave to Intervene and For Unsealing ("Supp.Obj.").[3]

## II. FACTS

### A. *Diversified II*

In Diversified II, I held that the Summary Judgment Documents are presumptively accessible to the public because they are "judicial documents" that informed the Court's decision to dismiss two of the claims in the underlying lawsuit. *See* 2003 WL 21767774 at *5. I then weighed two countervailing factors identified by respondents—judicial economy and the protection of confidential attorney-client communications—against the presumption. I found the first factor to be insufficient to outweigh the presumption in favor of public

access because "the parties' reliance on the confidentiality afforded by the Protective Order must have been tempered because the Order specifically provides that '[a]ny party or interested member of the public may request at any time that a Confidential designation be removed from any document or information.'" *Id.* at *6. Recognizing that the second factor would be sufficient to outweigh the presumption of access if the Summary Judgment Documents were replete with privileged attorney-client communications, as respondents contend, I appointed a Special Master to review the documents. *See id.* at *8.

### B. Special Master's Report

After a thorough and careful line-by-line review of all of the Summary Judgment Documents, the Special Master concluded that the majority of the documents are not privileged. *See* Report at 13. This conclusion was based, in large part, on the fact that DGI revealed the nature of its business and its relationship with Daugerdas when it filed its Complaint in the underlying action. *See id.* at 13–14 (citing Complaint ¶¶ 7, 9, 11–15). By placing this information into the public record, DGI waived any claim that these matters—its business and its relationship with Daugerdas—are privileged. *See id.* at 14.

The Special Master's conclusion was based also on a finding that most of the advice provided by Daugerdas was intended to be disclosed to third parties. *See id.* at 14–15. Lastly, the Special Master

---

3. Respondents argue that the Special Master's unanticipated Supplemental Report should be disregarded. *See* Supp. Obj. at 1–2. The Special Master was under extreme time pressure to produce his Report. *See Diversified II,* 2003 WL 21767774 at *8 n. 14 (giving the Special Master one week to review all the documents and submit a report). As a result, he purposely chose not to provide extensive analysis or citations for many of his conclu-

sions. *See* Report at 22 ("In order to provide the parties with a prompt Report, I have not included numerous citations to Illinois and New York law.... Should the court wish me to add additional citations later, I shall be happy to do so."). It appears that his Supplemental Report was intended to fill those gaps. Because the Court has found the Special Master's Supplemental Report helpful, respondents' request is denied.

found that the descriptions of the strategies contained in the Summary Judgment Documents were prepared for the purpose of marketing the tax plan—not for the purpose of seeking legal advice. *See id.* at 15.

Despite the Special Master's belief that none of the documents are privileged, he recommended, in an abundance of caution, that a narrow group of specific documents be redacted. *See id.* at 17–19 (listing documents). These documents generally fall into three categories: a specific request for legal advice or opinion, a specific response to a request for legal advice or opinion, or legal advice provided to DGI by an attorney not named as a party (*i.e.*, Orrin Tilevitz, general counsel of DGI). *See id.* at 19.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 53, a district judge may appoint a special master in a civil case. *See* Fed. R.Civ.P. 53(a). A master may take evidence and conduct hearings, *see* Fed. R.Civ.P. 53(c), and must file with the district court a report containing his findings of fact and conclusions of law, *see* Fed. R.Civ.P. 53(e)(1).

■ In non-jury cases, the district court must accept the master's findings of fact unless they are "clearly erroneous." Fed. R.Civ.P. 53(e)(2). The master's conclusions of law, however, or conclusions on mixed questions of law and fact, are entitled to no special deference and are subject to *de novo* review. *See Fogel v. Chestnutt*, 668 F.2d 100, 116–17 (2d Cir.1981).

## IV. DISCUSSION

Respondents make six general objections to the Report: (1) the attorney-client privilege protects confidential communications made before the engagement letter was executed; (2) legal invoices that disclose the services provided and advice rendered are privileged; (3) materials provided by DGI to Daugerdas in seeking legal advice are privileged; (4) the depositions of James Haber, president of DGI, and Daugerdas contain privileged materials; (5) the provision of legal advice to prospective clients under a confidentiality agreement does not waive the privilege; and (6) the identities of third-parties should be redacted. After a brief review of the basic law governing the attorney-client privilege, I will address each objection in turn.[4]

### A. The Attorney–Client Privilege

■ The attorney-client privilege "... is one of the oldest recognized privileges for confidential communications." *Swidler Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). The privilege, designed to "encourage full and frank communication between attorneys and their clients," shields from discovery advice given by the attorney as well communications from the client to the attorney, made in pursuit of or in facilitation of the provision of legal services. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The party asserting the attorney-client privilege bears the burden of proof. *See In re Grand Jury Subpoena Dated Dec. 19, 1978*, 599 F.2d 504, 510 (2d Cir.1979).

■ Rule 501 of the Federal Rules of Evidence provides that in civil actions in

---

4. In the appendix to respondents' objections, respondents identify a number of additional documents they believe should be redacted for reasons other than those set forth in the six general objections. Two of those documents merit redaction for the reasons set forth in Part V., n. 10 & 11 *infra*.

which state law supplies the rule of decision, issues concerning the attorney-client privilege shall be determined in accordance with state law. *See* Fed.R.Evid. 501. Under New York law, in order for the attorney-client privilege to apply, the communication from attorney to client must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship."[5] *Spectrum Sys. v. Chem. Bank,* 78 N.Y.2d 371, 378, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991). The communication itself must be primarily or predominantly of a legal character. *See id.*

## B. Respondents' Objections

### 1. Pre-engagement Communications

■■■■ Respondents argue that the Special Master erred in his conclusion that the communications between Haber and Daugerdas that pre-date the November 1996 engagement agreement are not privileged. *See* Obj. at 2–3. Communications with an attorney that predate formal retention *may* be privileged *if* "the party divulging [the] confidences and secrets to [the] attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." *Bennett Silvershein Assoc. v. Furman,* 776 F.Supp. 800, 803 (S.D.N.Y.1991) (internal quotation marks and citation omitted); *see also Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319 (7th Cir.1978) ("The fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client

with a view to retention of the lawyer . . . ."). Contrary to respondents' suggestion, the Special Master did not overlook this legal principle.

The Special Master found that the documents created before November 1996 are not privileged because there is insufficient "indicia of a reasonable expectation that an attorney-client relationship existed" at that time. Supp. Report at 2; *see also* Report at 20. A review of the documents reveals that the Special Master is correct. There is *no* indication in any of the pre-engagement documents that Haber approached Daugerdas with an intent to secure legal advice. On the contrary, there is strong proof that Haber sought business advice from Daugerdas. *See, e.g.,* 9/23/92 Letter from Haber to Daugerdas and Keith Kechik,[6] Ex. 10 to 11/22/00 Affidavit of John McConnell ("McConnell Aff."), counsel for DGI ("I10")[7] (stating that Haber hopes he "can build a successful *business* relationship" with Daugerdas and Kechik) (emphasis added). Without evidence that Haber intended to retain Daugerdas in a legal capacity at the time the communications were made, the documents are not privileged.

### 2. Invoices

■■■■ Respondents contend that the Special Master's conclusion that invoices from Altheimer & Gray, Daugerdas' former law firm, to Daugerdas are not privileged "cannot be reconciled with the plain text of the invoices." Obj. at 3. Respondents are wrong.

---

5. It makes no difference whether Illinois law, which was applied in *Diversified I* with respect to the breach of fiduciary duty claim, *see* 139 F.Supp.2d at 453, or New York law is applied. *See* Report at 21–22.

6. It is not clear from the document who Kechik is but it appears as if he and Daugerdas worked together at Arthur Andersen & Co.,

where Daugerdas was employed prior to joining Altheimer & Gray.

7. For ease of reference, I will use the numbering system employed by the Special Master to identify the documents. For an explanation of that shorthand form, see Report at 6 n. 1.

■ "Under federal common law, attorney fee arrangements, including the general purpose of the work performed, are not generally protected from disclosure by the attorney-client privilege." *Riddell Sports, Inc. v. Brooks,* 158 F.R.D. 555, 560 (S.D.N.Y.1994) (citing *Clarke v. American Commerce Natl. Bank,* 974 F.2d 127, 129 (9th Cir.1992)). However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, ..., fall within the privilege. *Clarke,* 974 F.2d at 129 (citations omitted); *see also Renner v. Chase Manhattan Bank,* 2001 WL 1356192, at *8 (S.D.N.Y. Nov.2, 2001) (acknowledging that billing records attorneys submit to clients are generally discoverable, unless production will necessarily reveal client confidences).[8]

The invoices merely identify the titles of some of the transactions. They provide no additional details regarding the nature of the legal services provided. *See, e.g.,* 6/10/97 Invoice (stating only "For Professional Legal Services Rendered re: UPC Transaction"). Because the invoices contain no confidential attorney-client communications, they are not privileged.

### 3. Marketing Materials

■ Respondents argue that the Special Master erred in his determination that certain marketing materials are not privileged, *see* Report at 15–16, because the materials were provided by Haber to Daugerdas in draft form, *see* Obj. at 4–5.

■ The disclosure to an attorney of drafts of documents ultimately intended to be released to the public is protected by

the attorney-client privilege where "th[e] [drafts] reflect client confidences [and] the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege." *Muller v. Walt Disney Prods.,* 871 F.Supp. 678, 682 (S.D.N.Y.1994) (internal quotation marks and citation omitted); *see also In re Kidder Peabody Sec. Litig.,* 168 F.R.D. 459, 474 (S.D.N.Y.1996) ("[P]ublic release of [a document] does not waive the privilege for the drafts if they were otherwise protected by the privilege. A client may intend to direct or permit the release of the final version of a· document while still intending that his communications with his attorney prior to the finalization of the document remain confidential.").

The Special Master found that not all of the marketing materials were in draft form. *See* Supp. Report at 3. In any event, even if they were drafts, the majority are not privileged because they were not provided to Daugerdas for the purpose of obtaining legal advice. *Compare* ALFS Presentation, Ex. 17 to McConnell Aff. ("I17") (found not privileged) (providing no directions to Daugerdas) *with* 8/6/98 Fax from Haber to Daugerdas, Ex. 23 to McConnell Aff. ("I23") (found privileged) (specifically requesting Daugerdas to review, in his capacity as a tax attorney, the section of the marketing materials summarizing the tax considerations of the strategy). The Special Master's specific determinations with respect to each of the marketing materials are correct.

### 4. Depositions

■ Respondents argue that the Special Master's conclusions and recommenda-

---

8. New York and Illinois privilege rules regarding disclosure of attorney time records coincide with the federal common law principles discussed above. *See Licensing Corp. of Am. v. National Hockey League Players Assoc.,* 153 Misc.2d 126, 580 N.Y.S.2d 128, 129 (1992); *People ex rel. Ulrich v. Stukel,* 294 Ill.App.3d 193, 228 Ill.Dec. 447, 689 N.E.2d 319, 325 (1997).

tions regarding the Haber and Daugerdas depositions are inconsistent with the law on attorney-client privilege and request an independent privilege review of the depositions. *See* Obj. at 5, 8.

█ It is axiomatic that voluntary disclosure of confidential communications constitutes a waiver of the attorney-client privilege. *See, e.g., von Bulow v. von Bulow (In re von Bulow)*, 828 F.2d 94, 101–02 (2d Cir.1987) ("[I]t has been established law for a hundred years that when [a] client waives the [attorney-client] privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut."). As the Special Master noted, DGI had "the right and opportunity to claim attorney-client privilege" during the deposition of Haber, but failed to do so. Supp. Report at 4. DGI's failure to claim privilege at that time constitutes a waiver of the right. Contrary to respondents' suggestion, the existence of a pro- tective order in this case, which permitted the parties to submit materials to the Court under seal, did not absolve DGI of the responsibility of protecting any claim of privilege.[9] Thus, the Special Master is correct in his determination that the depositions of Haber and Daugerdas are not privileged. Respondents' request that the Court conduct an independent review of the depositions is therefore denied.[10]

█ Respondents additionally request that only the excerpts of the Haber and Daugerdas depositions cited and relied upon by respondents in their summary judgment pleadings or by the Court in *Diversified I* be accorded the presumption in favor of access. *See* Obj. at 8–9 (arguing that the strong presumption *against* access to deposition discovery material recognized in *Securities & Exch., Comm'n v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir.2001), should apply). This request is also denied.

█ The presumption regarding discovery materials shifts when those materials are submitted to the Court for consideration in making a judicial determination. *See Byrnes v. Empire Blue Cross Blue Shield*, 2000 WL 60221, at *5 (S.D.N.Y. Jan.25, 2000) (noting an exception to the rule regarding the presumption that attaches to discovery documents where the documents are included in summary judgment motion papers submitted to the court). Moreover, the Court relied upon all the materials submitted to it in rendering its opinion on the summary judgment motion. *See Diversified II*, 217 F.R.D. 152, 2003 WL 21767774 at *5. Lastly, respondents chose to submit the complete depositions to the Court, presumably to put their citations in context, and are therefore bound by that decision.

### 5. Memoranda to Potential Clients

█ Respondents contend that the Special Master overlooked the context in which certain J & G memoranda were disclosed when he determined that those documents are not privileged. *See* Obj. at 10. Respondents emphasize that the memoranda were "made available to potential clients seeking legal advice about particular tax transactions." *Id.*

---

**9.** Respondents' reliance argument is also unavailing because the protective order specifically provided that a " '[c]onfidential designation' " could be challenged at any time....' " *Diversified II*, 217 F.R.D. 152, 2003 WL 21767774 at *6 (quoting 11/2/00 Protective Order).

**10.** The Special Master reviewed both of the depositions in full and found that they contained no privileged information. *See* Report at 17 (finding no disclosure of privileged communications beyond the material set forth in the complaint).

The fact that some of the prospective clients to which the memoranda were given may have sought legal advice from J & G about tax transactions at some unspecified time is immaterial. The memoranda were not prepared in response to a specific request for legal advice. They were intended as educational materials to solicit new clients for the purpose of selling them tax strategies. In fact, Daugerdas admitted at his deposition that the strategy memoranda were not confidential attorney-client communications, but rather an "educational tool.". 11/11/00 Deposition of Paul Daugerdas ("G10") at 215 (describing a December 1996 memorandum as "a standard item on our word processor that we always send to clients as part of the implementation of our strategy to make sure they understand the technical aspects of the strategy"). Thus, the Special Master is correct that the memoranda are not privileged.

### 6. Identities of Third Parties

█ As respondents themselves acknowledge, the Special Master's consideration of third-party information was limited to determining whether J & G could claim privilege as to the identity of its clients. See Report at 16–17 (finding no danger that the release of Daugerdas' deposition would reveal the identity of J & G's clients). Respondents now request that other information identifying third parties be redacted. See Obj. at 10 (noting that the Summary Judgment Documents contain references to many third parties and their participation in particular investment strategies).[11]

The Second Circuit has recognized that "[t]he privacy interests of innocent third parties" is a countervailing factor that "should weigh heavily" when balanced against the presumption of access. See United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir.1995) (internal quotation marks and citation omitted); see also Kelly v. City of New York, 2003 WL 548400, at *4 (S.D.N.Y. Feb.24, 2003) (acknowledging that the court must balance asserted privacy interests of individual non-parties against the public's interest in obtaining access to the records).

█ "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." Amodeo, 71 F.3d at 1051. "Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." Id. Next, the nature and degree of injury must be weighed. See id. The court should also consider the reliability of the information. See id. Lastly, the "court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein." Id.

The privacy interest asserted by respondents on behalf of third parties is extremely weak. The "identifying information" at issue reveals only that certain companies consulted with DGI, and that some of those companies were informed about a particular tax strategy. See, e.g., Plaintiff's Responses to Defendant's First Requests for Admission, Ex. 9 to 11/7/00 Affidavit of John J. Hutchinson, counsel for J & G, ¶ 20("C") (admitting that DGI disclosed the "Option Partnership Strategy" to a representative or representatives of Helios Financial). The Summary

---

**11.** I have reviewed all of the documents. Respondents appear to have exaggerated. None of the documents reveal participation in particular investment strategies.

Judgment Documents do not contain the companies' bank statements, financial statements, or tax returns, which are traditionally private. *See, e.g., McVane v. Federal Deposit Ins. Corp.*, 44 F.3d 1127, 1138 n. 4 (2d Cir.1995); *Hopkins v. United States Dep't of Hous. and Urban Dev't*, 929 F.2d 81, 87 (2d Cir.1991).[12] Although the third parties do not have an opportunity to dispute the information contained in the documents, there is no potential harm to them from the disclosure of the information because the documents do not even indicate whether the companies ever purchased the tax shelters. Lastly, there is no reason to doubt the reliability of this information. Weighing the third parties' very weak privacy interest against the strong presumption of public access, I find there is no need for redaction of third-party information.

## V. CONCLUSION

For the reasons set forth above, the Special Master's Report is accepted and adopted with the following additional redactions:

1. ¶¶ 28–29 of Daugerdas' Local Rule 56.1 Statement of Material Facts in Support of His Motion for Summary Judgment ("E");[13]

2. 5/3/96 Fax from Haber to Daugerdas with Attached Memorandum, Ex. 25 to McConnell Aff. ("I25");[14]

Respondents must produce a full set of the Summary Judgment Documents with the necessary redactions to the Court no later than September 2, 2003. The redacted documents will then be unsealed and made publicly available.[15]

**12.** The cases that recognize a privacy interest in financial information or documents do so for individuals. However, the Second Circuit has recognized that "privacy interests" in the context of protective orders may be construed broadly to include corporations as well as individuals. *See Amodeo*, 71 F.3d at 1051 n. 1 (highlighting the factual posture of *Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, No. 88–286, slip op. at 10 (E.D.N.Y. July 27, 1989), *aff'd*, 895 F.2d 74 (2d Cir.), in which the district court redacted the names of both corporations and individuals).

**13.** These paragraphs must be redacted because they discuss a December 6, 1996 Memorandum to Haber from Daugerdas ("G11") that the Special Master correctly found to be privileged. *See* Report at 18.

**14.** The Special Master did not consider this document because his set of documents contained a blank copy. *See* Report at 6. The fax cover sheet and memorandum that comprise I25 are identical to documents contained within I26, which the Special Master correctly concluded is privileged, *see id.* Thus, I25 must be redacted for the reasons provided by the Special Master with respect to I26.

**15.** On August 6, 2003, I ordered the Special Master's Report to be kept under seal until I ruled on the parties' objections. Now that I have done so, the Report is hereby unsealed. Respondents' objections to the Report and Supplemental Report are also unsealed.