Victor J. DeFAZIO, Jack Finkelstein, James Collins, and Henry Gebhard, Plaintiffs,

v.

Kevin WALLIS; Robert Aquino; Ryan P. Greenberg; Thomas Ryan; Bryan Zwolack; Capital Health Management, Inc.; Meridian Ambulance Group, LLC; Meridian Behavioral Sciences, LLP; Meridian Group Holdings, LLC; Meridian Behavioral Health Sciences, LLP; Meridian MSO, Inc.; Meridian MSO, LLC; National Health Car Corp; Phoenix Transport Corp. d/b/a Emergency Ambulance Service; University Care Network, LLC; Defendants "John

Does" and "Jane Roes" "1" Through "15", The Manes "John Doe" and "Jane Roe" Being Fictitious, the Identity of Said Defendants Not Being Presently Known to the Plaintiffs; and/or Others Presently Unknown to the Plaintiff, Jointly or Severally, Doing Business Under the Trade Styles Affordable Ambulance, Capital Management, Med Transit, Meridian, Meridian Behavioral Health Services, Meridian Health Services, National Ems, National Management Group, Phoenix Ambulance, Physicians Health Services, Presidential Emergency Medical Service and University Health Plans, Defendants.

No. 05–CV–5712(ADS)(ARL).

United States District Court,
E.D. New York.

Oct. 17, 2006.

Dinerstein & Lesser, P.C., by Robert J. Dinerstein, Esq., of Counsel, Commack, NY, for the Plaintiffs.

Law Offices of Edward Weissman, by Edward Weissman, Esq., of Counsel, New York, NY, for the Defendants Kevin Wallis and Ryan P. Greenberg.

Law Offices of Thomas F. Liotti, by Thomas F. Liotti, Esq., of Counsel, Garden City, NY, for the Defendants Robert J. Aquino and Capital Health Management, Inc.

Law Offices of Anthony A. Capetola, by Donald T. Rollock, Esq., of Counsel, Willston Park, NY, Co–Counsel for the Defendant Thomas Ryan.

Pezold, Smith, Hirschmann & Selvaggio, LLC, by George C. Pezold, Esq., of Counsel, Huntington, NY, for the Defendant Bryan Zwolack.

The Law Office of Bennett D. Krasner, by Bennett D. Krasner, Esq., of Counsel, Atlantic Beach, NY, for the Defendant Phoenix Transport Corp.

No Appearance: The Defendants Meridian Ambulance Group, LLC, Meridian Behavioral Sciences, LLP, Meridian Group Holdings, LLC, Meridian Behavioral Health Sciences, LLP, Meridian MSO, Inc., Meridian MSO, LLC, National Health Care Corp., and University Care Network, LLC.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On December 8, 2005, Victor DeFazio, Jack Finkelstein, James Collins, and Henry Gebhard (collectively, the "plaintiffs") commenced this action against the numerous defendants alleging, among other things, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Presently before the Court is an appeal by the defendant Kevin Wallis ("Wallis") of an

order of United States Magistrate Judge Arlene R. Lindsay that denied Wallis' motion to disqualify the plaintiffs' counsel.

## I. BACKGROUND

It is difficult to discern from the complaint specifically what conduct the defendants allegedly engaged in that gave rise to this lawsuit. Although the complaint contains 238 paragraphs and is 32 pages long, it contains few factual allegations of misconduct. The plaintiffs assert causes of action for violations of Sections 1962(a), (b), and (c) of the RICO statute, and state law causes of action for breach of fiduciary obligation, common law tort, "conversion/theft/ embezzlement" and unjust enrichment.

The complaint does contain allegations that the defendants made unspecified misrepresentations to the plaintiffs with the purpose of inducing them to invest in certain business entities, some of whom are named as defendants in this case. Also, at some point some of the defendants allegedly forged the signatures of the plaintiffs DeFazio, Finkelstein, and Collins on an application for a line of credit from the North Fork Bank, and misrepresented on that application that these plaintiffs were, among other things, officers and directors of the company applying for the loan. Finally, it is alleged that the defendants leased certain business equipment from third parties that they did not return when they terminated their operations. When the defendants did not return the leased equipment, the plaintiffs became liable as guarantors on the leases.

On January 6, 2006, the defendant Kevin Wallis ("Wallis") made a motion to disqualify the plaintiffs' counsel, Dinerstein & Lesser, P.C. and Robert J. Dinerstein, Esq. ("Dinerstein"), from representing the plaintiffs in this action based on allegations that Dinerstein previously represented Wallis and a small business with which Wallis was affiliated as an officer, and that during the course of that representation Wallis shared confidences with Dinerstein that can be used to Wallis' detriment in this lawsuit.

The submissions of the parties with respect to the motion to disqualify revealed that a hearing was necessary to resolve certain factual disputes related to Dinerstein's alleged representation of the Wallis. Accordingly, on March 13, 2006, the Court referred Wallis' motion to Judge Lindsay for the purpose of resolving all questions of fact and law relating to the motion to disqualify, and to issue an order determining the motion pursuant to Rule 72(a) of the Federal Rules of Civil Procedure.

On May 18, 2006, Judge Lindsay conducted a hearing at which Wallis, Dinerstein, and a third witness testified. On August 11, 2006, Judge Lindsay issued a written Order denying Wallis' motion. *See* Order, Docket Entry 91 (Aug. 14, 2006) (the "Order"). On August 20, 2006, Wallis timely filed an appeal of the Order to this Court.

## II. DISCUSSION

### A. The Legal Standards

#### 1. Standard of Review

When considering an appeal of magistrate judge's ruling on a non-dispositive matter, a district judge "shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. Rule 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter … where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir.2004). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y.2002) (citation omitted).

## 2. The Standard for Disqualification

■ "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.' " *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir.2005) (citing *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979)). In exercising this power, the Court must "attempt[ ] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession." *Hempstead Video, Inc.*, 409 F.3d at 132 (internal quotations and citations omitted).

■ Whether or not disqualification is warranted is subject to the Court's discretion. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). In this regard, given the "immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons ... and inevitably cause delay," *Nyquist*, 590 F.2d at 1246, the Court must demonstrate reluctance in granting motions to disqualify counsel. *See, e.g., W.T. Grant Co. v. Haines*, 531 F.2d 671 (2d Cir.1976); *see also Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F.Supp.2d 273 (S.D.N.Y.2004). As the Second Circuit has advised:

when dealing with ethical principles, ... we cannot paint with broad strokes. The lines are fine and must be so

marked. Guideposts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent.

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir.1977) (quoting *United States v. Standard Oil Co.*, 136 F.Supp. 345, 367 (S.D.N.Y.1955)).

■ " 'As a matter of professional responsibility, an attorney owes a duty of loyalty to his client ... not to divulge confidential communications ... and not to accept representation of a person whose interests are opposed to the client.' " *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 23 (N.D.N.Y.2002) (emphasis added) (quoting *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir.1986)). However, "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc.*, 409 F.3d at 132. Disqualification is warranted only where "an attorney's conduct tends to taint the underlying trial." *Nyquist*, 590 F.2d at 1246 (internal quotations and citations omitted); *see also Ehrich*, 210 F.R.D. at 25. This "risk [of taint] is encountered when an attorney ... might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir.1981).

■ To determine if disqualification is warranted in cases of alleged successive representation, the Court must employ the three-prong "substantial relationship" test. *See, e.g., Hempstead Video, Inc.*, 409 F.3d at 133. Under this test, the Court must be satisfied that:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *see also Hempstead Video, Inc.*, 409 F.3d at 133; *Cheng v. GAF Corp.*, 631 F.2d 1052, 1056 (2d Cir. 1980), *vacated on other grounds*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739–40 (2d Cir.1978); *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 131–35 (2d Cir.1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754 (2d Cir.1975); *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir.1975); *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570–74 (2d Cir.1973); *Battagliola v. Nat'l Life Ins. Co.*, No. 03 Civ. 8558(GBD)(AJP), 2005 WL 101353, at *6 (S.D.N.Y. Jan. 19, 2005); *United States Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1457–66 (S.D.N.Y.1985); *T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265, 268–69 (S.D.N.Y. 1953).

Here, Wallis seeks to have Dinerstein disqualified from representing the plaintiffs in this matter because Wallis claims that in 1999 he retained Dinerstein to represent a company called Regional Medical Transport ("RMT"). At that time in 1999, Wallis served as the Chief Executive Officer of RMT. The purpose of the prior representation was to assist RMT in connection with an administrative proceeding before the Regional Emergency Medical Services Council of the City of New York.

### B. Judge Lindsay's Order

Based on the submissions of the parties and the testimony at the May 18, 2006 hearing, Judge Lindsay determined that Wallis satisfied the first two elements of the "substantial relationship" test, but failed to meet the third element. With respect to the first element, Judge Lindsay determined that an attorney-client relationship existed between Wallis and Dinerstein, even though Dinerstein was retained to represent RMT and not Wallis individually. *See* Order at 7–8. Although Dinerstein objects to Judge Lindsay's finding that there was a prior attorney-client relationship, the Court finds no reason to disturb Judge Lindsay's conclusion. *See Rosman v. Shapiro*, 653 F.Supp. 1441, 1445 (S.D.N.Y.1987).

As to the second element, Judge Lindsay determined that there is a substantial relationship between the issues in the present lawsuit and the subject matter of Dinerstein's representation of RMT. *See* Order at 6. An issue underlying this case is whether Wallis induced investors to invest in certain entities by lying to them about his educational and employment background. The prior representation relating to RMT also involved an issue of Wallis' alleged misrepresentation of his educational and employment background. Neither party objects to Judge Lindsay's conclusion regarding the similarity of issues presented in the former and present representation.

### C. As to the Likelihood that Confidences were Passed

█ The final element of the substantial relationship test requires the Court to consider whether Dinerstein had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of Wallis. In cases such as this, where the same individ-

ual lawyer participated in the prior and current representation, the movant is not required to make a specific showing that confidences were passed to counsel. Instead, the movant is entitled to the benefit of an irrebuttable presumption that confidences were shared. *See, e.g., Gov't of India v. Cook Indus., Inc.,* 422 F.Supp. 1057, 1060 (S.D.N.Y.1976), aff'd, 569 F.2d 737 (2d Cir.1978) ("The law is clear that if the former action and the present action are 'substantially related' and the attorney's involvement in the former case was more than peripheral, then there is an irrebuttable presumption that the attorney had access to confidential information.") (footnote and citations omitted); *Tiuman v. Canant,* No. 92 Civ. 5813, 1994 WL 198690 at *3–4 (S.D.N.Y. May 19, 1994) ("When an attorney was personally in control of a prior representation, there is an irrebuttable presumption that the attorney had access to confidential information."); *Yaretsky v. Blum,* 525 F.Supp. 24, 29 (S.D.N.Y.1981) (recognizing that the presumption is irrebuttable).

"The presumption arises in order to forestall a direct inquiry into whether confidential information was in fact transmitted by the client." *United States Football League,* 605 F.Supp. at 1461. "Such an inquiry would be improper; it would put the movant to the choice of either revealing its confidences in order to prevail on the motion or else refraining from moving to disqualify, thereby running the risk that its adversary will use its confidences against it in the litigation." *Id.*

The application of this irrebuttable presumption can be traced to the case of *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.* 113 F.Supp. at 269. In *T.C. Theatre Corp.,* the Court stated:

To compel the client to show, in addition to establishing that the subject of the present adverse representation is related to the former, the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule. It would defeat an important purpose of the rule of secrecy—to encourage clients fully and freely to make known to their attorneys all facts pertinent to their cause.

Considerations of public policy, no less than the client's private interest, require rigid enforcement of the rule against disclosure. No client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney.... The rule prevents a lawyer from placing himself in an anomalous position. Were he permitted to represent a client whose cause is related and adverse to that of his former client he would be called upon to decide what is confidential and what is not, and, perhaps, unintentionally to make use of confidential information received from the former client while espousing his cause. Lawyers should not put themselves in the position "where, even unconsciously, they might take, in the interests of a new client, an advantage derived or traceable to, confidences reposed under the cloak of a prior, privileged relationship."

*Id.* at 269 (paragraph break added). Building on this premise, the Second Circuit has stated:

The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of

a lawyer's representation in a given case. These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage.

Moreover, the court need not, indeed cannot, inquire whether the lawyer did, *in fact,* receive confidential information during his previous employment which might be used to the client's disadvantage. Such an inquiry would prove destructive of the weighty policy considerations [underlying the rule because] the client's ultimate and compelled response to an attorney's claim of non-access would necessarily be to describe in detail the confidential information previously disclosed and now sought to be preserved.

*Emle Indus.,* 478 F.2d at 571.

This situation is different from a case involving an attorney who is associated with a larger firm, and a party seeks to disqualify the attorney and the firm based on the attorney's prior representation. *See United States Football League,* 605 F.Supp. at 1462 n. 28. Under those circumstances, the presumption that the client shared confidences with the individual lawyer is not rebuttable, but the firm itself will be permitted to defend against disqualification by showing that the conflicted attorney was subject to appropriate "screening" measures. *See id.; Hempstead Video, Inc.,* 409 F.3d at 137. "Screening" is not possible in a case where the same attorney or attorneys associated with the same small firm participate in both the prior and subsequent representations. *See Cheng,* 631 F.2d at 1058.

██ In this case, after determining that Wallis and Dinerstein had a prior attorney-client relationship based on a matter sufficiently related to this one, Judge Lindsay considered the testimony of the parties to determine if confidences were actually passed. Judge Lindsay credited Dinerstein's testimony over that of Wallis, and concluded that Wallis did not disclose to Dinerstein the information he claimed to have disclosed and, even if Wallis did disclose that information, it was not confidential because Wallis intended the information to be passed on to a third party.

Having determined that the same lawyer, Dinerstein, previously represented the defendant Wallis in a related matter, the sharing of confidences should have been presumed, and Wallis' motion should have been granted. The fact that Wallis intended for Dinerstein to communicate some or all of that information to third-parties does not change the result of disqualification. *Gov't of India,* 422 F.Supp. at 1060 ("[I]f a substantial relationship is established, the presumption of access to confidences prevails even though the 'confidential' information may be publicly available."); *NCK Org., Ltd.,* 542 F.2d at 133 (stating that "the attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge.") (citation omitted); *Tiuman,* 1994 WL 198690 at *3 ("Even if all confidential information to which [counsel] had access was independently known by the [adversary], [the client's] privilege in this information as disclosed to his attorney ... is not thereby nullified."). Accordingly, Wallis' motion to disqualify Dinerstein as counsel for the plaintiffs in this action should be granted.

Finally, the fact that Wallis appeared before Judge Lindsay and testified, with-

out objection, concerning the nature and substance of his prior relationship with Dinerstein does not change the analysis. *Cf. United States Football League,* 605 F.Supp. at 1448. In the Court's opinion, the integrity of attorney-client relationships will be better served by a strict, bright-line rule of disqualification based on an irrebuttable presumption of shared confidences. *See Emle Indus., Inc.,* 478 F.2d at 571 ("These [ethical] considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage.").

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Order of United States Magistrate Judge Arlene R. Lindsay, dated August 14, 2006, is reversed; and it is further

**ORDERED,** that Wallis' motion to disqualify Dinerstein & Lesser, P.C. and Robert J. Dinerstein, Esq. as counsel for the plaintiffs is granted; and it is further

**ORDERED,** that the plaintiffs retain new counsel, who is to file a notice of appearance within thirty days of the date of this order.

**SO ORDERED.**